## GROGAN MFG. CO. v. LANE.
### No. 11449.

Court of Civil Appeals of Texas. Galveston.
July 8, 1943.

Rehearing Denied July 29, 1943.

See, also, Tex.Sup., 169 S.W.2d 141.

Carney & Carney and Tom J. Mays, all of Atlanta, for appellant.

Shelburne H. Glover, of Jefferson, for appellee.

CODY, Justice.

Appellant brought this suit against appellee in trespass to try title to the merchantable pine timber standing on a certain 47 2/3 acre tract in Marion County, describing its true lines by metes and bounds. Defendant answered that he had acquired the timber in question from one Roscoe Culverson, who had acquired the title to the 47 2/3 acre tract of land (hereafter referred to as the tract) by the ten years' adverse possession. Roscoe Culverson intervened in the suit with an action in trespass to try title to the tract against both plaintiff and defendant. The principal question in the case is whether the evidence was sufficient to sustain the verdict of the jury on limitations.

Roscoe Culverson, an East Texas country negro, returned from the war in 1919 with some money. At that time an uncle of his, Ben Fitzpatrick, was the record owner of the tract against which there were then considerable delinquent taxes due. With the belief that he had become the owner of the land by a parol sale from his uncle, Culverson redeemed the tract. He then built a house or shanty as his home, six feet of which were located across the true east boundary line, but such house was 17 feet west of or within the apparent or marked east boundary line of the tract. Ben Fitzpatrick, his said uncle, who was nearly blind, made his home with Culverson, as a party of Culverson's family, in the aforesaid house. In June, 1923, this uncle who continued to be the record owner of the tract conveyed it by a general warranty deed to J. C. Bailey and J. A. Guest. How many years it was before Culverson learned of this conveyance is not pointed out by either of the parties. By mesne conveyances the record title to the merchantable timber became vested in appellant.

Culverson, by a general warranty timber deed dated August 8, 1941, conveyed the timber to appellee. Appellant instituted suit on October 10, 1941.

Culverson and his family lived in the house in question from the time it was erected in 1920 until the suit was filed. His uncle died years ago, and his wife somewhat later. His wife was the owner of an undivided interest in the tract of land which adjoined this tract on the east, and Culverson farmed some patches of ground on the tract in which his wife owned an undivided interest. Her father was living, as well as brothers and sisters, and her father, as we understand the record, exercised control thereover. But the land which Culverson cultivated on the tract in which his wife was part owner was considerably in excess of the land which he cultivated in the tract here involved. It appears that upon the tract here involved he cleared a total of but 7 3/4 acres, and this total consisted of different patches; and of these patches it seems that he continuously cultivated but two. One of these patches which he continuously cultivated was a garden consisting of a half acre; the other patch was an acre and a half. The remaining patches which he cultivated upon this tract were never cultivated for as much as ten consecutive years. While he allowed the taxes to become delinquent from time to time, he continued to pay them, and pay them as upon his home. He never enclosed the entire tract with a fence, but it was, of course, less than the 160 acres which he could lawfully acquire by adverse possession, without fencing.

The case was submitted to the jury upon a single special issue, in response to which the jury found that Culverson had held peaceable and adverse possession of the tract in question, using, occupying and enjoying same for a consecutive period of ten years prior to October 10, 1941. Plaintiff seasonably moved for judgment notwithstanding the verdict, which the court overruled, and rendered judgment on the verdict that plaintiff take nothing, and cancelled plaintiff's timber deed. Judgment was also rendered for Culverson for the land, subject to the rights of appellee under his timber deed. The remaining provisions of the judgment are not here relevant.

■ Appellant makes no contention that Culverson's holding of the land actually occupied by his house and by the two patches cultivated was not sufficient, had they been accurately described, to have sustained a finding which would have supported a judgment that the plaintiff (appellant) take nothing by its suit with respect to such patches; and the space upon which the house was built. But it is appellant's contention that the evidence shows that Culverson's occupancy of the tract amounted to no more than encroachments thereon, and was insufficient to affect the record owners of the tract with notice that he was encroaching on the tract for the purpose of acquiring the title to the entire tract by such encroachments. Bracken v. Jones, 63 Tex. 184, 186 and 187. "Whilst the true owner is chargeable with a knowledge of the boundaries of his land, he can hardly be affected with notice that a neighbor, who has encroached a few feet upon his tract, is doing so for the purpose of acquiring title to six hundred and forty [now one hundred and sixty] acres of it. He would rather impute it to a mistake on the part of the apparent trespasser as to the division line between them. Whilst this might not excuse the party trespassed upon for not asserting his right to the land actually occupied by the trespasser, it would certainly save him from such consequences as the loss of a section [now 160 acres] of his land." Id.

In Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 470, 31 L.R.A.,N.S., 153, it was said: "In Bracken v. Jones and Holland v. Nance [102 Tex. 177, 114 S.W. 346], owners of land in using them mistook the exact locations of their boundaries and extended their fences across their lines so as to take in small parts of adjacent tracts belonging to others. * * * The facts were held to present a question of law and not one of fact for the jury. It must be kept constantly in mind that, in applying a proposition like that, the facts of particular cases must be carefully regarded, and that additional facts may easily take the question, whether or not the evidences of possession and adverse claim were sufficiently certain and unequivocal to give notice to reasonably diligent owners, out of the province of the court and into [the province] of the jury."

■ In the present case it is clear that Culverson thought he was the owner of the tract. He intended to and thought he had purchased it in 1919. He intended to and thought he had built his home com-

pletely upon it. He paid taxes on it. While he was doubtless charged with notice where the boundary lines of the tract were located (Bracken v. Jones, supra), he mistakenly built his dwelling six feet across the true eastern boundary line. This is not the usual type of encroachment case where an owner of one tract intentionally builds his house or fences so as to encroach upon his neighbor's land to such a small extent as to lead his neighbor to conclude that his land is not being trespassed upon at all, or, if so, that it was mistakenly and unintentionally done. Culverson did not even own the adjoining tract, and his wife owned only an undivided interest in it, and this adjoining tract, as we understand the evidence, was managed and controlled by her father. Furthermore, the clearing by Culverson of patches which he cultivated eight or nine, or fewer, years, though insufficient as a matter of law to mature title thereto, may well have been regarded by the jury as sufficient to evidence that he was holding the entire tract adversely. Reasonably diligent owners of land take notice of the adverse possession of squatters before such possession matures into title. And the doctrine of encroachments announced by our Supreme Court in Bracken v. Jones, supra, goes no further than to protect the owner of the land where he can not reasonably know from the trespasser's possession that it is hostile. In other words, where the possession is so notorious, visible and distinct that the reasonably diligent owner would refer such possession to the intention to appropriate his land, and would not reasonably impute such possession to a mistaken belief on the part of the intruder that he is occupying his, the intruder's, own land, the doctrine of encroachments does not excuse the owner from taking notice of the hostile possession.

After careful and painstaking consideration of the evidence, we have reached the conclusion that the evidence was sufficient to justify the submission of the issue to the jury. Appellant has not presented the point that the verdict was against the great preponderance of the evidence. He has presented the point that it was shown by the evidence upon the trial that Culverson had two children, and that his wife is dead, and asserts that they were necessary parties, and that it was reversible error to proceed with the trial without them as parties to the suit, and assigns such action as fundamental error apparent upon the face of the record. Had appellant taken a bill of exception which showed that Culverson had married but once, and that his wife was dead and died intestate, leaving two surviving children, there would be matter in the objection. Indeed, a court should sua sponte decline to proceed with a trial when it is made to appear that necessary parties are not before it. But if any such error occurred, however fundamental, it does not appear upon the face of the record.

The judgment of the trial court is affirmed.

Affirmed.

MONTEITH, C. J., not sitting.